FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2008 JUL 17 PM 2: 14
CLERK R. Aiken
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| REBECCA CONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: CV507-059 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge J. Richard Stables ("the ALJ" or "ALJ Stables") denying her claim for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff protectively filed an application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income on March 23, 2004, alleging that she became disabled on March 10, 2004, due to arthritis, shortness of breath, sleep apnea, high blood pressure, and limited intellectual functioning. (Pl.'s Br., p. 1; Tr. at 14). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely

AO 72A
(Rev. 8/82)

request for a hearing. On April 11, 2006, ALJ Stables held a hearing at which Plaintiff appeared and testified. ALJ Stables also conducted a supplemental hearing on Decembewr 14, 2006, at which Paul Dolan, a vocational expert, testified. ALJ Stables found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 14). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 5).

Plaintiff, born on November 11, 1964, was forty three (43) years old when ALJ Stables issued his decision. She has a limited education. Her past relevant work experience includes employment as a cook, baker, cashier, and stock clerk. (Tr. at 20).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to

preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date of March 10, 2004, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 16). At Step Two, the ALJ determined that Plaintiff had the following conditions, which are considered "severe" under the Regulations: morbid obesity, mild degenerative joint disease and osteoarthritis of the left ankle, obstructive sleep apnea, DeQuervain's tenosynovitis of the left wrist, vertigo, and asthma. (Tr. at 16-17). ALJ Stables found Plaintiff did not have any impairment or combination of impairments which met or medically equaled one of the listed impairments. ALJ Stables found Plaintiff had the residual functional capacity to: lift/carry 0 pounds frequently and 20 pounds occasionally; stand/walk 2 hours in an 8 hour workday; occasional bending, kneeling, squatting, crawling, and climbing stairs and ramps; never climb ladders or balance; and avoid chemicals, dust, fumes, smoke,

concentrated exposure to heat, unprotected heights, and moving machinery. (Tr. at 18). At the next step, ALJ Stables concluded that Plaintiff could not perform her past relevant work, as these jobs are performed in the national economy. (Tr. at 19). The ALJ considered Plaintiff's age, education, work experience, residual functional capacity, and the vocational expert's testimony and concluded Plaintiff could perform the jobs of information clerk, receptionist, check cashier, surveillance systems monitor, and ticket seller, as these jobs are performed in the national economy. (Tr. at 21).

## ISSUES PRESENTED

Plaintiff asserts ALJ Stables erred by: 1) finding she was able to perform certain jobs despite clear evidence she does not possess the intellectual skills for the reasoning, mathematic computations, and language requirements of these jobs; 2) failing to order a consultative psychological and/or orthopedic evaluation; and 3) failing to consider her sleep apnea and the effect this condition would have on her ability to maintain the attention and concentration necessary to perform the jobs identified by the vocational expert.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the

Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I.     Plaintiff's Ability to Perform Other Jobs**

Plaintiff asserts ALJ Stables found she could not perform any of her past work but could perform the jobs of ticket seller, surveillance systems monitor, check cashier, receptionist, and information clerk. Plaintiff contends these jobs require a general education development of more than a basic ability to reason and perform mathematic computations and language abilities. Plaintiff avers she cannot perform any of these jobs because, as the evidence shows, she has never functioned at the level assigned to the simplest of these jobs. Plaintiff also avers she repeated the first grade and was socially promoted every grade from second through seventh. Plaintiff asserts her counsel urged the ALJ to order a consultative psychological evaluation to test Plaintiff's actual intellectual limitations and functioning abilities, which the ALJ declined to do.

Defendant contends Plaintiff ignores the fact that she performed work in the past that fell into the semi-skilled to skilled range and she has not presented any medical evidence which suggests her ability to perform mental work activities has deteriorated. Defendant also contends that, had psychological testing been performed, the ALJ would not have been required to ignore the nature of Plaintiff's work history.

Under the Act, a plaintiff bears the burden of proving that she cannot perform her past relevant work. Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). If a plaintiff cannot perform her past relevant work, the burden shifts to the ALJ to prove that other work exists in the national economy which the plaintiff can perform. Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

ALJ Stables noted Plaintiff's counsel requested a psychological evaluation with IQ testing based on Plaintiff's history of social promotions and low grades in school, which Plaintiff alleges show she cannot perform the reasoning, math, or language requirements of the jobs the vocational expert determined Plaintiff could perform. ALJ Stables stated he could not accept Plaintiff's argument and did not see the need for a psychological evaluation for several reasons. First, the ALJ noted Plaintiff "sustained competitive employment at six (6) semi-skilled jobs and one (1) skilled job". (Tr. at 22). ALJ Stables also noted Plaintiff's records show her adaptive functioning "is not retarded" and that her reasoning, math, and language skills are adequate for semi-skilled competitive employment. Second, the ALJ noted Plaintiff's self-reports reveal she used machines, tools, equipment, and technical knowledge/skills; wrote; and completed reports. Third, Plaintiff completed several of the Social Security Administration's forms and admitted she could read and write, which demonstrated to ALJ Stables that Plaintiff

was not so intellectually limited as to be unable to perform competitive employment. Fourth and finally, ALJ Stables observed that people who worked for the Social Security Administration "consistently reported [Plaintiff] had no difficulties understanding or answering questions", which showed Plaintiff had "adequate mental capacity." (Id.)

ALJ Stables' determination that he did not need to order a consultative psychological examination is supported by substantial evidence. Plaintiff stated she can read and write in English and did not indicate she had any problem doing so. (See, e.g., Tr. at 106). A Disability Report indicated Plaintiff had no observed or perceived problems with reading and that she answered questions without any problems. (Tr. at 118). Further, Plaintiff stated she stopped working in October 2001 because she was not paid, not because of any medical or special condition which precluded her from working. (Tr. at 121). Though not in every job, Plaintiff did report using machines, tools, or equipment; using technical knowledge or skills; and writing or completing reports in several jobs. (Tr. at 131-34, 144, 163-68). The undersigned notes Plaintiff's school records and counsel's seeming assertion that Plaintiff's social promotions necessarily translate into an inability to perform any work. (Tr. at 211-12, 215-16). The undersigned also notes that Plaintiff performed a variety of jobs in the past, which ranged from unskilled to skilled levels at the light to heavy exertional levels; there is no indication that Plaintiff's ability to perform these jobs was compromised by an alleged psychological limitation. ALJ Stables determined Plaintiff could perform a variety of jobs which exist in the national economy, and Plaintiff has offered nothing creditable to indicate she cannot perform any of these jobs. Plaintiff's assertions in this regard are without merit.

## II. The Failure to Order a More Extensive Consultative Evaluation

Plaintiff alleges her counsel also requested a consultative orthopedic evaluation, including x-rays, of her knee, ankle, neck, and wrist. Plaintiff contends, while ALJ Stables granted this request, the evaluation did not include x-rays. Despite this, Plaintiff asserts, the consultative orthopedic physician found Plaintiff had significant limitations, including the ability to lift and carry 0 pounds frequently and 20 pounds occasionally; to stand and walk no more than 2 hours in an 8 hour workday; to occasionally climb ramps, stairs, stoop, crouch, kneel, or crawl; and to not climb ladders, ropes, or scaffolds or do any balancing. Plaintiff alleges the consultative physician's limited examination reveals she can do sedentary work, at best.

Defendant avers Plaintiff cites no authority for the proposition that the consultative orthopedic physician was obligated to conduct tests he did not deem necessary. Defendant contends Dr. Hein's report shows that a full range of testing was performed and that he credited some of Plaintiff's alleged symptoms based on the medical signs he observed. Defendant also contends ALJ Stables accepted Dr. Hein's opinion. Defendant further contends Dr. Hein's examination was adequate in the absence of evidence from a treating source of greater limitations.

If an ALJ requests a consultative examination, he is under no duty to include in that examination request everything a claimant's representative wishes to have performed, so long as the record is sufficient for the ALJ to make an informed decision. See Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007) (noting that an ALJ has "a duty to develop the record where appropriate but is not

required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.").

ALJ Stables based his findings for Plaintiff's residual functional capacity on the opinion of Dr. Douglas Hein, which ALJ Stables determined to be consistent with and corroborated by the medical and other evidence of record. (Tr. at 18). ALJ Stables noted Plaintiff did not have left wrist complaints when Dr. Hein examined her, nor did she allege any problems with dizziness or symptoms of vertigo. ALJ Stables also noted Dr. Hein found Plaintiff to have full range of motion of all major and minor joints, including her knees, which he found to have some mild swelling with patellofemoral crepitus. Dr. Hein determined Plaintiff's swelling presented moderate restrictions. (Id.)

Plaintiff does not find error with ALJ Stables' reliance on Dr. Hein's opinion; rather, Plaintiff finds fault with his failure to order x-rays as a part of Dr. Hein's examination. Dr. Hein noted he reviewed Plaintiff's medical records, in addition to physically examining Plaintiff. (Tr. at 466). Plaintiff has not shown ALJ Stables had a duty to order x-rays as part of the consultative examination or that this failure rendered Dr. Hein's opinion unreliable. Plaintiff is not entitled to relief on this basis.

### III. Plaintiff's Sleep Apnea

Plaintiff contends the ALJ is required to assess all of a claimant's limitations and impairments, and ALJ Stables failed to consider her sleep apnea and the effect that condition has on her ability to maintain the attention and concentration necessary to be a surveillance systems monitor. Defendant asserts ALJ Stables considered Plaintiff's sleep apnea but found Plaintiff's claim to be at odds with her medical records, which indicated she slept well when she used her C-PAP.

The ALJ found Plaintiff's obstructive sleep apnea to be a severe impairment; however, ALJ Stables noted Plaintiff's report that she slept well with her C-PAP machine. (Tr. at 17).

The ALJ considered Plaintiff's sleep apnea and did not find this condition would have an effect on her ability to be a surveillance systems monitor. Plaintiff reportedly slept better when she has used her C-PAP machine, which in turn improved her sleep apnea condition. (Tr. at 226, 260, 412, 562). The only evidence of Plaintiff's sleep apnea affecting her ability to work is the recommendation that Plaintiff avoid excessive fume, gases, heights, hazards, and dangerous machinery due to her sleep apnea (Tr. at 411), and ALJ Stables took these limitations into account in determining Plaintiff's residual functional capacity and finding Plaintiff not disabled. (Tr. at 18). In addition, ALJ Stables noted Plaintiff's claim that she had trouble staying awake and being tired during the day, which he found to be undermined by her assertion to a clinic physician that she slept well with her C-PAP machine. (Tr. at 19, 226). The ALJ's decision is supported by substantial evidence. Plaintiff is not entitled to her requested relief on this ground.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 17th day of July, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE